UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERIANA PERRIEN and
MICHAEL PERRIEN,

    Plaintiffs,

v.                                Case No. 8:08-cv-2586-T-30TGW

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment (Dkt. 75), Defendant's Response in Opposition of same (Dkt. 93), Defendant's Motion for Summary Judgment (Dkt. 83), Plaintiffs' Response in Opposition of same (Dkt. 97), Plaintiffs' Motions in Limine to Exclude Inadmissible Opinion Testimony of Edward McClellan, Jr., Esquire and David de Armas, Esquire (Dkts. 80 and 81), and Defendant's Response in Opposition of same (Dkt. 95). The Court, having reviewed the motions, responses, record evidence, and being otherwise advised in the premises, concludes that Plaintiffs' motion for partial summary judgment should be granted in part and the parties' remaining motions should be denied.

## BACKGROUND

In this insurance case, Plaintiffs seek a declaration that Defendant acted in bad faith in its handling of an insurance claim arising from an automobile accident. Specifically, on June 19, 2004, Plaintiff Michael Perrien was driving an automobile co-owed by Plaintiff Jeriana Perrien, when he was involved in an automobile accident with a vehicle driven by Lindsay Salo ("Salo"). Salo suffered a severe brain injury as a result of the accident. Her car also sustained significant damage and was ultimately determined to be a total loss.

At the time of the collision, Plaintiffs had an automobile policy with Defendant Nationwide Mutual Fire Insurance Company ("Nationwide"), which provided liability coverage with limits of $10,000 per person / $20,000 per accident for bodily injury and $25,000 for property damage. After the collision, Salo's guardians presented a claim against Plaintiffs. The Salo claim was then reported to Nationwide.

Nationwide undertook the investigation and defense of the Salo claim and within days after the accident, Stephanie Likins ("Likins"), an adjuster with Nationwide, tendered the bodily injury limit of $10,000 to Salo's mother. The check was not deposited by Salo's mother. Subsequently, Salo's guardians consulted with an attorney and there were communications between the attorney and Likins with respect to the claim and the fact that Salo's mother was in receipt of the $10,000 check from Nationwide.

Ultimately, on November 7, 2005, Nationwide received a letter from Salo's guardians' attorney, Dan Dalesandro, Esq. ("Dalesandro"), offering to settle Salo's claims. The offer required Nationwide to provide: (1) a payment of $18,767 for property damage, consisting

of $15,400 for the value of Salo's car, $750 for loss of use of the vehicle for 25 days, and the remainder for interest since the date of the accident; (2) payment of the per-person limit of all bodily injury liability insurance; and (3) full compliance with the insurance disclosure statute, including sworn and notarized statements from the insurer and the insureds. In return, Salo's guardians would deliver a general release. The offer stated that it would be open for twenty days from the date of the letter.

According to Nationwide, Likins was surprised that the offer included a demand for property damages. In a letter dated November 14, 2005, Likins stated that a new check for the bodily injury limits would be issued and requested an extension until December 15, 2005, to obtain affidavits from Plaintiffs. However, the letter did not agree to pay anything for property damage.

Ultimately, Salo's claim was not settled and Salo's guardians filed a lawsuit against Plaintiffs.[1] Specifically, on December 23, 2005, Dalesandro wrote Likins and informed her that he had filed suit. Likins resigned from Nationwide soon afterwards and the claim was reassigned to Stephen Treem ("Treem"). In February 2006, Treem sent Dalesandro checks for $10,000 for bodily injury and $18,767 for property damage, but Dalesandro returned the checks and moved forward with Salo's lawsuit. Salo's guardians proceeded to litigate their

---

[1] The Court will not recount the entire course of conduct between the parties as to Salo's claim, because those events are described in detail in the parties' motions and responses, and there are a number of material disputed facts in the record regarding Nationwide's handling of Salo's claim, which precludes an entry of summary judgment in favor of either party. These facts will be discussed in more detail during the Court's discussion of the bad faith claim.

personal injury action against Plaintiffs and Plaintiffs were defended by counsel appointed by Nationwide. On January 22, 2008, the property damage claim was settled for $18,767.

Subsequently, Plaintiffs, Salo's guardians, and Nationwide entered into a stipulation known as a *Cunningham* agreement, which stayed the personal injury suit.[2] In the stipulation, Plaintiffs agreed to file and prosecute an action for declaratory judgment against Nationwide, seeking a judicial determination of whether Nationwide acted in bad faith in handling Salo's claim against Plaintiffs. The stipulation provided that if the outcome of the declaratory action, after any appeals, was a determination that Nationwide did act in bad faith, a final money judgment would be entered against Nationwide for $7.5 million, plus attorneys' fees and interest. If the outcome of the declaratory action was a determination that Nationwide did not act in bad faith, Salo's guardians would accept $10,000 as a full and final payment of Salo's bodily injury claims, dismiss the personal injury suit, and execute a release in favor of Plaintiffs and Nationwide.

## DISCUSSION

**I.     The Parties' Motions for Summary Judgment**

    **A.     Summary Judgment Standard of Review**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled

---

[2] This type of agreement will be discussed in more detail below.

to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a

conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

B. **Legal Discussion**

1. **Plaintiffs' Motion for Partial Summary Judgment on Defendant's Fourth Affirmative Defense**

As an initial point, Plaintiffs move for summary judgment on Defendant's fourth affirmative defense. This defense states:

> Nationwide would state that Plaintiffs' complaint fails to state a cause of action upon which relief can be granted because Salo's demand for settlement improperly combined demands for payment under two separate and distinct coverages. Such demand cannot form the basis of a claim for breach of fiduciary duty based upon Nationwide's efforts to negotiate Salo's separate and distinct claims severally as required by Florida law.

(Dkt. 10). Plaintiffs argue that the fourth affirmative defense fails as a matter of law because it is not improper for a claimant to make an offer to settle all damages arising out of a single incident merely because the damages happen to fall under two different liability coverages of an insurance policy.

The Court agrees that this defense fails as a matter of law. There is simply no Florida authority that prohibits a claimant from offering to settle all claims and damages arising out of an accident. Indeed, such a demand is common and there are a number of Florida cases that have noted that an insurer could be liable for bad faith based on its failure to accept a settlement offer that included demands for both bodily injury damages and property damages. *See GEICO Gen. Ins. Co. v. McDonald*, 315 Fed. Appx. 181 (11th Cir. Nov. 20, 2008);

*Quigley v. Gov't Employees Ins. Co.*, 2008 WL 126598 (M.D. Fla. Jan. 10, 2008); *Macola v. Gov't Employees Ins. Co.*, 410 F.3d 1359 (11th Cir. 2005).[3]

Accordingly, Defendant's fourth affirmative defense fails as a matter of law and Plaintiffs' motion for partial summary judgment is granted on this issue.

### 2. Plaintiffs' Motion for Partial Summary Judgment on the Issue of Whether Defendant's Breached a Duty

Plaintiffs moves for partial summary judgment on their declaratory action, asking the Court to make a finding as a matter of law that Defendant breached a "duty" it owed to Plaintiffs, which entitles them to a judgment against Defendant for $7.5 million under the *Cunningham* agreement, which was entered into between Plaintiffs, Defendant and Salo's guardians. Plaintiffs concede that, at the summary judgment stage, they are not moving for a finding of bad faith on the part of Defendant, which is normally a jury question, but argue that the *Cunningham* agreement establishes that they are entitled to the $7.5 million judgment if the Court finds that Defendant breached a duty it owed to Plaintiffs. Plaintiffs rely on certain language in the *Cunningham* agreement, which states that Nationwide will be liable if the Court finds that Nationwide committed "bad faith *or breached its duties*." (Dkt. 1, Ex. A). Plaintiffs also argue that the record is undisputed that Nationwide breached its duty to properly advise Plaintiffs that Nationwide's rejection of Salo's settlement offer could result

---

[3] The Court also notes that Plaintiffs' response to Defendant's motion for summary judgment points out a number of bad faith cases from other jurisdictions that involved a settlement offer that included both property damage and bodily injury damages. (Dkt. 97, p. 15).

in an excess judgment against Plaintiffs and that they could prevent an excess judgment by contributing to the settlement.

Defendant argues, in part, that the clear language of the *Cunningham* agreement and the purpose behind *Cunningham* agreements demonstrate that Plaintiffs are only entitled to a judgment against Defendant if it is determined that Defendant acted in bad faith.[4]

As an initial point, it is instructive to discuss the genesis of a *Cunningham* agreement. The general rule under Florida law regarding the filing of a bad-faith claim is that a court lacks jurisdiction to adjudicate bad-faith claims before the insured's liability is established for damages exceeding the policy limit. *See Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275-76 (Fla. 2000). In *Cunningham v. Standard Guaranty Insurance Co.*, 630 So. 2d 179, 181 (Fla. 1994), the Florida Supreme Court stated that under ordinary circumstances, a third party must obtain a judgment against the insured in excess of the policy limits before prosecuting a bad-faith claim against the insured's liability carrier. *See Blanchard v. State Farm Mut. Auto. Ins.*, 575 So. 2d 1289 (Fla. 1991) (announcing analogous rule to that of a first-party bad-faith claim).

*Cunningham*, however, contained an exception to the rule requiring an excess judgment prior to prosecution of a bad-faith claim. In *Cunningham*, the court held that a trial court would have jurisdiction to decide the issue of bad-faith handling of an insurance claim

---

[4] As an initial point, Defendant argues that the *Cunningham* agreement is inadmissible. Because the Court holds that the agreement solely governs a bad faith claim and does not allow for the adjudication of a single breach of duty, Defendant is not prejudiced by the Court's review of the agreement for this limited purpose.

prior to the determination of liability and damages in the underlying tort claim where the parties so stipulated. *Id.* There, the parties had stipulated "to try the bad faith action before trying the underlying negligence claim ... and that if no bad faith was found, the ... claims would be settled for the policy limit, and [the plaintiff] would not be exposed to an excess judgment." *Id.* at 180. In explaining its ruling, the Florida Supreme Court stated: "In an arrangement such as the one in the instant case, trying the bad-faith claim before the underlying negligence action would result in a full release of the insured if no bad faith were found, thereby avoiding a time consuming and expensive trial on negligence." *Id.* at 182. As emphasized by the Florida Supreme Court, the stipulation furthered judicial economy objectives because the agreement and stipulation circumvented the need for a trial of the underling liability if the insurance company prevailed in defending the bad-faith claim. *Id.* With regard to the usual requirement of an excess judgment, the court explained that the parties' stipulation was the "functional equivalent of an excess judgment." *Id.* at 182.

Here, the parties entered into such a stipulation. The stipulation makes it clear that it allows for the adjudication of a "bad faith case" and refers to the "bad faith case," "bad faith trial," "bad faith issue," "bad faith action," "bad faith counsel," and "Bad Faith Claim" in numerous places. (Dkt. 1, Ex. A). Although Plaintiffs rely on sparse language in the stipulation that discusses a breach of a duty, to argue that they need to show only that Defendant breached a duty in order to obtain a judgment against Defendant, the agreement as a whole makes it clear that its purpose is to allow for the adjudication of a claim for bad faith.

Thus, the Court holds, as a matter of law, that the stipulation does not allow for an entry of judgment in the amount of $7.5 million against Defendant if there is a finding that Defendant breached a "duty." Such a finding would be contrary to the language of the parties' stipulation and the purpose behind a *Cunningham* agreement, which, in essence, serves as an excess judgment against the insured in order to allow a party to bring a bad-faith claim against an insurer. There is no Florida authority suggesting that such an agreement would permit an entry of judgment against an insurer for its breach of a single duty, no matter how insignificant.

Accordingly, Plaintiffs' motion for partial summary judgment is denied on this issue and the Court holds, as a matter of law, that the parties' stipulation allows for a judgment against Defendant upon a determination that Defendant acted in bad faith.

### 3. Defendant's Motion for Summary Judgment on the issue of Bad Faith

Defendant argues that it is entitled to an entry of summary judgment on Plaintiffs' claim of bad faith because the Court should hold that an insurance carrier cannot be held liable for bad faith when it timely tendered its bodily injury limits and the claimant chose to deny the tender and demand a settlement that included a property damage claim that posed no realistic exposure to the insured. Plaintiffs counter that there is no Florida authority that supports Defendant's argument and that the record reflects material disputed facts on the issue of bad faith.

The Court previously held, herein, that there is no Florida authority supporting Defendant's argument that an insurance company should not be liable for refusing to accept an offer of settlement that combines a claim for bodily injury damages and property damage. Moreover, the Court holds that the record contains material disputed facts on the issue of bad faith.

In *Berges v. Infinity Insurance Co.*, the Florida Supreme Court explained the purpose of bad-faith insurance law:

> Bad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims. The insurance contract requires that the insured surrender to the insurance company control over whether the claim is settled. In exchange for this relinquishment of control over settlement and the conduct of the litigation, the insurer obligates itself to act in good faith in the investigation, handling, and settling of claims brought against the insured. Indeed, this is what the insured expects when paying premiums. Bad faith jurisprudence merely holds insurers accountable for failing to fulfill their obligations ....

896 So. 2d 665, 682-83 (Fla. 2005).

Twenty-five years earlier, the Florida Supreme Court set forth the standard to be applied in bad-faith litigation:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give

> fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla.1980) (internal citations omitted).

Furthermore, "[a]n insurer cannot escape liability for breach of the duty of good faith by acting upon what it considers to be its interest alone." *Id.* at 786. In determining whether an insurer has acted in bad faith in handling a claim, courts apply the totality of the circumstances standard, considering several factors, including that an insurer has a duty to advise the insured of settlement opportunities and the probable outcome of a lawsuit and to warn him of the consequences of an excess judgment so that he might take whatever steps are available for his own protection. *Shin Crest PTE, Ltd v. AIU Ins. Co.*, 605 F. Supp. 2d 1234, 1239-40 (M.D. Fla. 2009). Where the insured reasonably relies on the insurer to conduct settlement negotiations, and the insurer fails to disclose settlement overtures to the insured, the jury may find bad faith. *Id.* Finally, the ultimate tender of the policy limits does not automatically insulate an insurer from liability for bad faith. *Id.*

Here, the jury could find that Defendant did not diligently and adequately investigate Salo's claim. Specifically, the record reflects disputed facts on the issue of whether Likins adequately investigated Salo's property damage. The Court notes that Defendant's argument that it eventually settled the property damage claim does not preclude the bad-faith claim, because it did not eliminate Plaintiffs' excess liability for Salo's bodily injury damages.

Accordingly, Defendant's motion for summary judgment on Plaintiffs' bad-faith claim must be denied.

## II. Plaintiffs' Motions in Limine

Plaintiffs filed motions in limine to exclude the inadmissible opinion testimony of Edward McClellan, Jr., Esquire ("McClellan") and David de Armas, Esquire ("de Armas"). Plaintiffs argue that Defendant's expert, McClellan, is not qualified to testify as an expert and offers impermissible legal conclusions. Plaintiffs argue that Defendant's expert, de Armas, also offers impermissible legal conclusions, i.e., that Defendant acted in good faith in its handling of Salo's claim against Plaintiffs. Plaintiffs also argue that any opinions about the development of bad-faith law are irrelevant to the issue to be decided by the jury, which is whether Defendant committed bad faith. Plaintiffs also contend that McClellan and de Armas should not be permitted to testify about the parties' intent in this case.

Defendant argues in its response that Plaintiffs have retained two expert witnesses to testify that Defendant acted in bad faith. Defendant argues that it would be premature to rule on the admissibility of the opinions of McClellan and de Armas prior to the proffer of their testimony at trial. Defendant states that McClellan has been a member of the Florida Bar for nearly 43 years, and, other than some limited defense work while in Miami, has been a personal injury plaintiff's attorney. As such, Defendant argues that McClellan has had experience dealing with insurance companies and bad-faith issues.

Defendant contends that, similar to Plaintiffs' experts, who have opined that Defendant breached duties owed to Plaintiffs, de Armas' testimony is that Defendant acted in good faith, i.e., fairly and honestly and with due regard to the interests of the insured. Defendant also points out that Plaintiffs' arguments in favor of excluding Defendant's experts are based on the bullet points contained in the expert disclosures. And Defendant points out that Plaintiffs can challenge Defendant's experts on any issues of bias and credibility on cross examination.

The Court concludes that it would be premature to exclude Defendant's experts at this stage. Although the Court will not allow an expert to offer impermissible legal conclusions, testimony of which he is not qualified to opine, redundant testimony, irrelevant testimony, and testimony based on speculation as to the parties' intent, these issues shall be ruled upon at trial after the voir dire of the experts and the Court may exclude any testimony at that point if appropriate.

Accordingly, Plaintiffs' motions in limine to exclude inadmissible opinion testimony of McClellan and de Armas must be denied without prejudice to raise these issues at trial, after the testimony is proffered.

It is therefore ORDERED AND ADJUDGED that for the reasons set forth herein:

1. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 75) is hereby GRANTED IN PART AND DENIED IN PART.

2. Defendant's Motion for Summary Judgment (Dkt. 83) is hereby DENIED.

3. Plaintiffs' Motions in Limine to Exclude Inadmissible Opinion Testimony of Edward McClellan, Jr., Esquire and David deArmas, Esquire (Dkts. 80 and 81) are hereby DENIED WITHOUT PREJUDICE.

**DONE** and **ORDERED** in Tampa, Florida on July 23, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-2586.motions.wpd